Good morning, Your Honor. Stephen Demick, Federal Defenders. I represent Mr. Alamilla before the Court. Mr. Alamilla's sentence should be remanded for resentencing because at sentencing, the District Court did not comply with Rule 32. In fact, the District Court expressly refused to comply with Rule 32 in making specific factual findings as to the issues of aggravated assault, serious bodily injury, among numerous others, including restitution. Your Honors, there were four separate sentencing hearings in this case, and that's rather unusual. And the reason for that is because so many issues were presented and put in direct factual dispute by Mr. Alamilla. And then at the end of the sentencing, the four sentencing hearings were not ruled upon by the District Court. So which issues in particular are you contending were not resolved by the District Court? Your Honor, the specific issues, I would say the primary issue was that of aggravated assault. Mr. Alamilla's sentencing guidelines range, the advisory sentencing guidelines range for a high-speed flight from an immigration checkpoint began at a level 10. When the District Court was done in applying all of the enhancements, beginning with aggravated assault, it resulted in a level 29. But what about that violates Rule 32? What violates Rule 32, Your Honor, is that for a finding of aggravated assault, first of all, there must be an assault. There must be intent. And as Mr. Alamilla stated in his opening brief, that issue was never resolved by the District Court. What case authority are you relying upon to support your argument that there must be an intent showed for aggravated assault enhancement to apply? Well, Your Honor, I'm referring to the guidelines themselves. For the sentencing guideline 2A.2.2, application note 1 says that or isn't there? I don't believe so, Your Honor. I believe what it says is it requires, excuse me, involves the intent to cause bodily injury and then in parentheses, i.e., not merely to frighten. Your Honor, I think not only is this interpretation supported by application note 1 of the guidelines, it's inherent in what an aggravated assault is. It's an assault. And therefore, because this was not resolved by the District Court, even though it was placed in direct factual dispute by Mr. Alamilla, the District Court failed to comply with Rule 32. Let's read the whole definition of aggravated assault. Okay, it means a felonious assault that involved a dangerous weapon with intent to cause bodily injury, serious bodily injury, or intent to commit another felony. So why not use B, which is serious bodily injury, as opposed to A? Any of these can suffice to establish aggravated assault. Well, Your Honor, I would disagree with that interpretation, because what it says is it's a felonious assault, which involves A, B, or C. So you're resting your argument on the felonious assault portion of the definition. Whether there was an assault, period. What I'm arguing, Your Honor, is that because what I'm arguing is that there was not a clear finding made pursuant to federal rules. And what I asked you before is, what case authority supports your argument that the only way an aggravated assault can be shown is through the intent element, when there are alternatives in the application note? Well, Your Honor, what I'm citing is the language of the guideline. Okay. And, Your Honor, I think a case which is highly persuasive and very similar is that of the Houston case. And I put that in my opening brief at page 23. In that case, Your Honor, it was a bank robbery case which involved the pre-sentence report alleging that the defendant had made threatening statements. The defendant put those threatening statements in direct dispute, saying that he never made those threatening statements. In the Houston case, the district court essentially punted the issue and did not make a clear finding on whether those statements were even made and applied the enhancement. That case was remanded for resentencing because this Court said in that case, and as I'm arguing in this case, is that federal rule of criminal procedure 32 requires strict compliance. And what that means is that for an appellate court to be able to look down at the record, there needs to be a clear finding. And what the district court did not do is make that clear finding. And what should the district court have done in your view that it did not do? Well, Your Honor, if I can cite to an ER excerpt of record in the district court's own words, I think it will reflect what the problem was. At page 583 of the excerpt of record, when Mr. Alamia, I think for the second or third time, made a specific objection to aggravated assault, the court said, I'm incorporating the totality of the record. You're free to then address your issues to the Court of Appeals on appellate review. And maybe looking at, then the government would have to support, then from the record, the totality of evidence piece by piece that it contends to support the determination that it's aggravated assault. That's not a clear ruling. And that's my position here, is that that statement by the district court did not say, I am making this finding and I am making it because it has been put in direct factual dispute. Were there no magic words required in order to make a finding? Well, Your Honor, beyond magical words, I think that the words that the district court used were clearly punting the issue to the appellate court, rather than making a finding. The next sentence that the district court stated at sentencing was, then the appellate court can take a look at that same factual record and then decide whether the circumstantial evidence taken as a whole provides the inference that I believe it does. If we look at the language that was used in the Houston case, the language in the Houston case was far less ambiguous than this language. And this court remanded, saying, we need strict compliance with Rule 32. And what I'm stating in this case is that there were several sentencing hearings at which Mr. Alamia requested an evidentiary hearing at sentencing and the court refused. And the court has the right to do that under an abuse of discretion standard. However, what the court does not have the right to do is refuse to make specific factual findings on the record, citing that there is a dispute and how that dispute was resolved. The court found serious bodily injury. That was the basis for its use of the aggravated assault enhancement. Would you agree with that? I don't, Your Honor. The serious bodily injury was a separate enhancement. The guidelines for a violation of Section 758, which is a high-speed flight from a checkpoint, are found at United States Sentencing Guidelines 2A2.4. That's specifically what the statute tells you to go to. What happened was the court made a finding of aggravated assault to get to the aggravated assault guideline and then, above and beyond that, applied several other adjustments, including- But I thought you were talking about 2A2.2. That's what you cited me to in your argument regarding the aggravated assault enhancement. You were not talking about the base offense level. You were talking about the enhancement. Well, Your Honor, when you go to 2A2.4, there's a cross-reference that says that if you find this constitutes aggravated assault, go to the aggravated assault guideline. In the aggravated assault guideline, it tells you what aggravated assault is. That's the language that I was citing in the application note. And that's when I ask you, didn't the court use the serious bodily injury part of that definition to find aggravated assault? Well, Your Honor, the serious bodily injury was an enhancement above and beyond the aggravated assault. So what did the court use to find aggravated assault then? That's a good question. You don't know? Is that what you're saying? What I'm saying is there was not a clear finding made on the record. And because there was not a clear finding made on the record, this Court should remand for resentencing so that the district court can comply with Federal Rule of Criminal Procedure 32 and resolve specific factual issues that were put in dispute. And with that, Your Honor, I'd like to reserve the remainder of my time. All right. Thank you. Thank you, Your Honor. May it please the Court, my name is Edward Weiner, Assistant U.S. Attorney, Counsel for Appellee, United States of America. I guess we're issuing our arguments today just on the issues of the 758 violation, unless the Court wants to address the 1326 violation. We're talking about the conviction under Count 2 of the indictment, unlawful flight from a Border Patrol checkpoint under Section 758 of Title 18. The guidelines are clear, and the Court had a three-day trial and a record before it, and a probation officer's report was clear. The record indicates on ER-596, after the issue of whether or not an evidentiary hearing was required, the Court said that the Court declines to do that. I don't think it's necessary. I've got the trial transcript, so I think we're fine on that. So under Rule 32, whether the Court had to make specific findings or not is not at issue, was not really an issue in the briefing by the subjects. But here's how the guideline calculation occurred with regard to that count violation of 758. The guideline under 2A.2.2A raised the guideline under the unlawful flight from a Border Patrol checkpoint from 10 to 14. Under 2A.2.2B.2.B, a dangerous weapon, and it was conceded by the appellant that the car was a dangerous weapon, resulted in plus four. Under 2A.2.2B.3.B, there was a victim's bodily injury, and I think Judge Rawlinson was going into the three alternative findings under the victim injury. Under 3A.1.2C.1, there was an official victim injury for plus six. All of these findings were clear in the three-day trial that the district court held, and the district court found that no evidentiary hearing was required. In fact, at the time of the sentencing, the final sentence, final sentencing in this matter, the victim, Helen Westerberg Davis, appeared and allocuted before the court. She was there to be cross-examined. There were sufficient agents who testified at trial who could have been cross-examined on all of these issues. I think it's a bogus issue to bring up that Rule 32 was violated on this record. Now, after the guidelines were calculated under the conviction for 18 U.S.C. 758, the probation officer did a guideline calculation for the count two violation under 8 U.S.C. 1326. 2L.1.2A had the initial guideline at eight, and there was plus 16 under 2L.1.2B.A.2i for a prior felony conviction, in this case, Alameda's prior conviction for unlawful sexual intercourse with a minor under the age of 16. All these issues were fully briefed, and then the probation department grouped the two violations of conviction, adding one unit to the higher conviction calculation of 29 under the count 3758 violation, for a total guideline range of 30. And the court, opposing the government's contention that there should not be minus two for acceptance of responsibility, granted Alameda minus two levels for acceptance of responsibility, coming out with a combined offense level 28, criminal history category three. The range was 97 to 121 months, and the court calculated the mid-range as being reasonable. And the court did state under the 3553 factors, after doing the analysis under the guidelines, At ER 655, the court says the court has taken into consideration all of the sentencing factors, including the advisory guidelines and the factors under 3553A. The court again says that it presided over the trial of this matter, was able to see and hear the attitude and demeanor of the witnesses, and I still believe this is one of the more egregious cases that the court has seen on these facts for someone who's not supposed to be in the United States, being here, not stopping properly at the checkpoint, and then sadly making an official victim the agent, and then also the innocent bystander victim sitting on the side of the road trying to go to school to teach her special ed class. So the court does believe that the sentence is just and proper. Clearly, Rule 32 was not violated. Now, there are a number of issues with regard to the illegal entry violation that I'd like to address in my remaining time. Counsel, could you please address the Kovian-Sandoval issue? Yes, I'd be happy to. Kovian-Sandoval found that in the context of a 1326 allegation in which the date of the deportation was not set forth, and there was some possibility that there were two or three dates of deportation that might be found by the jury remanded for resentencing. Now, the court in the Martinez case, which followed Kovian-Sandoval, clarified that issue in stating that if there was only one likely date of deportation or removal, which is the language used now, then a finding by a jury and review by this court that that date of deportation was the only one possible would not violate Kovian-Sandoval. Now, the in-bank Ninth Circuit in Morales-Escuerdo in Ruling 11-4 found that a reinstatement of a prior deportation was sufficient by an immigration officer. And in the facts of this case, what happened was there was an alien file custodian, a file custodian, William Schroeder, who testified at trial about a deportation before an immigration judge on October 20, 2003. There was later testimony, extensive testimony about the September 13, 2004, reinstatement of deportation, which, in fact, was the key deportation in this case, which followed the aggravated felony that Alameda pled guilty to in June of 2004. But how do we know? We know that, I'm sorry. You know my question? Yes. Go ahead and answer it then. We know that it was the September 13, 2004 deportation, which was clearly found by the jury because there was no evidence of the 2003 deportation except for the A file custodian saying that there was an October 20, 2003, immigration judge deportation. Andres Basmante, who testified that he witnessed the actual removal of Alameda on September 13, 2004, and I've looked at the documents. His document shows the fingerprint comparison to the immigration judge's original removal order on October 20, 2003. He testified that he was present. He testified that the procedures used were not perfect, but he was present when Alameda was, in fact, removed. He witnessed the removal on September 13, 2004. In addition, in the record, there's testimony about a post-arrest statement made by Alameda after he was apprehended after the flight from the checkpoint in which he said, and this was March 9, 2005, that he was last deported, and this is in the record, several months before. I think he was saying that it was four months before. In fact, if you calculate it, it's about six months before September 13, 2004. So there was ample evidence in the record for the jury to find that the only removal or deportation that was clearly found beyond a reasonable doubt by the jury was the September 13, 2004 removal. It could not have been the October 20, 2003 immigration judge action, which was reinstated, and in which Morales-Escuerdo clearly- Why couldn't it have been? Because there was no evidence to find that the jury had fingerprint evidence, testimonial evidence, documentary evidence. All of the documents that Andres Bismonte put into evidence when he testified had to do with the September 13, 2004. The AFILE custodian, in going through all of the events with regard to this defendant, did in fact refer to the October 20, 2003 deportation, but all of the other evidence was the September 13, 2004, and that's what the jury found. Are you now, when an indictment is prepared, are you now taking care of all these problems? We are alleging the date now. That's correct. We have to kind of clean up sort of sloppy work, don't we? Well, as a matter of fact, Your Honor, we don't believe it was sloppy work. It was done in our district for many, many years. The date of deportation was not alleged. The cases are clear that if the jury is clear on what the date is, that the date does not have to be alleged. But now, out of an abundance... You know, our systems have changed throughout the years. They have. You know that. I mean, now we're blessed with this system. A remand would... I think it's a curse, but... It is. Yeah, I'm sure everybody in this room followed every argument you made and every nuance, and, you know, their minds are flipping through all this wonderful stuff. But you just can't go and rely on what you did in the past. A remand wouldn't solve that problem, Your Honor. I'm not talking about that. I'm just talking about the way your work is conducted. Well, I'm not here to comment on that. Well, I'm here to talk about that. I'd be happy to respond. If you'd been a little more careful, we wouldn't have had all these arguments today. I think that's correct, Your Honor. Okay, that's a wonderful concession. I'll order three copies of that transcript. Thank you. Well, in all fairness, I think you were trying to comply with the law as it existed at that time. You were. Yeah. My time is up. Would you like to hear more? No. Oh, no. Counsel, before you come up for rebuttal, please bring your blue brief and show us where you made the Rule 32 argument in that brief. You know, I might add, especially in San Diego, we've got the federal defenders, a brilliant group of defense lawyers that watch every move you make. So you've got to be very careful down there. We can see that. Oh, absolutely. Absolutely. The gray brief doesn't help me. You have to do it in the blue brief. If I may ask you to clarify, Your Honor, when you say the Rule 32 argument, you're stating where I made the argument that the district court did not make adequate finances to the aggravated assault? Yes. I would assume that there would be a reference to Rule 32 in making that argument. On page 30 of the opening brief, Your Honor, Mr. Alamea was denied his right to a reliable and appealable record by the district court's refusal to make specific articulated findings on the record justifying these enhancements. I cite the Hernandez-Rodriguez case. I also cite Federal Rule of Criminal Procedure 32. I have just two points I really need to address based on the government's argument. The first is that the government states that these agents were subject to cross-examination, and they were. And if you look at the trial record at ER 293, the agent said that Mr. Alamea's hitting the Border Patrol vehicle was an accident. On the record, on the trial record, the Border Patrol agent on cross-examination said that this wasn't an assault. This wasn't a ramming. This was an accidental contact. That's ER 293. The second thing is that the government makes reference to Ms. Westerlin Davis being the victim, but this is specifically why there was confusion. Who was the victim? Was it the Border Patrol agent, or was it a result of the accident that occurred 24 miles past the checkpoint? It's not clear from the record. Your Honor made reference to serious bodily injury. Was that serious bodily injury Ms. Westerlin Davis's bodily injury? And if it was her bodily injury, was she a victim of aggravated assault? What happened at sentencing was very simply the probation officer and the government went and picked and chose the guidelines that they wanted to result in a 19-level enhancement. And the district court, after repeated, repeated factual objections by Mr. Alamea, did not make specific findings on any of those objections, and that's why his case must be remanded for resentencing. Counsel, your argument regarding Rule 32 was made in passing. The part that you just cited to me was made in passing in the context of your argument that there should have been an evidentiary hearing. So is that what you're resting your argument on, that there should have been an evidentiary hearing? Well, no, Your Honor, because as I stated in the first argument, that's an abuse of discretion whether the court holds an evidentiary hearing. That doesn't vitiate Mr. Alamea's rights under Federal Rule 32. You didn't flesh out that argument in your brief at all. Your Honor, in my first written objections to the PSR, I had 20 factual objections to the PSR, none of which were resolved on the record. And I asked this Court to go and look at the totality of the record, as the district court instructed this Court to do, saying the Court of Appeal can make that determination. Nowhere, Your Honor, in the four sentencing hearings, did the district court address each and every one of Mr. Alamea's four objections. You didn't let us know that was your argument. When you filed your opening brief, you didn't go into that in your opening brief. Well, Your Honor, I think that I did. And I would state that on page 30, by making reference to the Hernandez-Rodriguez case and also referencing the Houston case, that what I was saying is that if we would have had an evidentiary hearing, perhaps the district court then, at the end of an evidentiary hearing, would say, I've heard the evidence. I've listened to it. Here's the record on why aggravated assault occurs. We don't have that. I understand your argument. Thank you, Your Honor. I appreciate your time. Thank you. The matter is submitted. Thank you.  Thank you, Your Honor. Next case is U.S. v. Solorzano v. Alderaan.
judges: Pregerson, Rawlinson, Sandoval